UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS CLINTON, JR.<br><br>      Plaintiff,<br><br>    v.<br><br>SELECT PORTFOLIO SERVICING, INC., NATIONAL DEFAULT SERVICING CORP.<br><br>      Defendants. | Case No. 2:16-cv-02228-WHO<br><br>**ORDER DENYING MOTION TO DISMISS** |

## INTRODUCTION

Defendants Select Portfolio Servicing, Inc. ("SPS") and National Default Servicing Corporation ("NDS") (collectively, "defendants") move to dismiss plaintiff Lewis Clinton, Jr.'s ("Clinton") first cause of action for negligence, second cause of action for violation of California Civil Code section 2923.6(c), and fourth cause of action for violation of California Civil Code section 2924.10, all based on defendants' handling of Clinton's application for a loan modification for Clinton's residence at 1169 Songwood Road, Vallejo, California, 94591 (the "Property"). The central issue I must decide is whether a lender has a duty of reasonable care when it processes a loan application. Under the facts alleged here, defendants did have such a duty and Clinton has plausibly pleaded his claims. Defendants' motion to dismiss is DENIED. They shall answer within ten days.

**BACKGROUND**

On February 15, 2005, Clinton borrowed $655,000 from lender Town and Country Credit Corporation and secured the transaction with a first-lien Deed of Trust ("DOT") against the Property. Compl. ¶ 39 (Dkt. No. 1). In 2012, he began experiencing financial difficulties derived from the care and passing of his father, legal issues unrelated to this action, and his loss of employment. *Id.* ¶¶ 41, 42. He fell into default on his mortgage payments. Seeking help, he contacted SPS, his loan servicer, for foreclosure avoidance assistance. *Id.* ¶ 43.

SPS invited Clinton to apply for a loan modification and instructed him to submit several forms and financial records. *Id.* ¶ 44. It informed him that once he submitted his complete application, it would evaluate it and determine his eligibility for a loan modification. *Id.* ¶ 44. Clinton alleges that he submitted a complete application, with all the requested documents, in December of 2014. *Id.* ¶¶ 45, 46.

SPS did not acknowledge that his application was complete until April 22, 2016. *Id.* ¶¶ 56, 57. Between December 2014 and April 22, 2016, Clinton responded to SPS's requests to update his application to cure "expired" documents when requested by SPS, but it refused to acknowledge his application as complete. *Id.* ¶ 49. Clinton continued to inquire regarding the status of his complete application without success. *Id.* ¶ 53.

On January 14, 2016, thirteen months following his initial submission, SPS and NDS, the trustee under the DOT, recorded a Notice of Default ("NOD") on Clinton's interest in the Property. *Id.* ¶ 52. SPS and NDS then recorded a Notice of Trustee's Sale ("NOTS") on April 15, 2016, setting a date of sale for May 11, 2016. *Id.* ¶ 55. On April 22, 2016—seven days following the recording of the NOTS—SPS notified Clinton that his application was complete and he would receive a determination within thirty days. *Id.* ¶¶ 56, 57. SPS did not return a written determination of Clinton's application for loan modification. *Id.* ¶ 58. A trustee's sale was postponed to August 15, 2016, but has not yet occurred. *Id.*

**LEGAL STANDARD**

**I. MOTION TO DISMISS**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted). A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

**DISCUSSION**

**I. NEGLIGENCE**

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed

3

the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).  Clinton argues that SPS had a duty to exercise reasonable care in the processing and handling of his loan modification application and that SPS breached that duty when it refused to properly file, organize, and account for each submitted document, causing damage.  Compl. ¶¶ 61, 62.   I agree.

### A.  Duty of Care

Defendants assert that Clinton's negligence cause of action must fail because banks do not owe a duty of care to borrowers when acting within the scope of lending money and that SPS was acting in this capacity in the processing and handling of Clinton's application for a loan modification.  Clinton responds that a lender who invites a borrower to apply for a loan modification steps outside of its conventional role as a lender and owes a borrower a duty of care when handling and processing a submitted loan modification application.

A bank does not owe a duty of care to a borrower "when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n.*, 231 Cal. App. 3d 1089, 1096 (1991).  However, "[w]hether a duty of care exists is a question of law to be determined on a case-by-case basis." *Lueras*, 221 Cal. App. 4th at 62.  This depends on consideration of the  six factors outlined in *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)): "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* (citing *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)).

The California Supreme Court has yet to decide whether a loan servicer owes a duty of care when handling an application for a loan modification; lower courts that have considered the issue are split.  *See Martinez v. Flagstar Bank*, 2016 WL 3906810, No. 15-cv-01934-KJM, at *7

(E.D. Cal. July 18, 2015).[1]  SPS relies on *Lueras v. BAC Home Loans Servicing, LP* to argue that there is no duty here.  Mot. 4.  In *Lueras*, the California Court of Appeal for the Fourth District found no duty where the plaintiff alleged that the lender breached its duty of care by "failing to timely and accurately respond to customer's requests and inquiries, by failing to comply with state consumer protection laws, properly service the loan, and use consistent methods to determine modification approvals and by failing to … record proper land records … and ensure chain of title prior to foreclosing and to stop all foreclosure sales that are unlawful."  221 Cal. App. 4th at 63 (internal quotation marks omitted).  The *Lueras* court relied on the general rule that a financial institution does not owe a duty of care unless the involvement exceeds the scope of a traditional lender.  *Id.* at 67.  It reasoned that a loan modification is the "renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money."  *Id*.  In other words, the court found that there was no duty owed because the bank was simply acting in its routine business of lending money.

The court found that there was no common law duty to offer or approve a loan modification under the *Biakanja* factors because the harm suffered by the borrower was not due to the denial of a loan modification but was due to the situation that placed the borrower into a position where the borrower could not repay the loan.  *Id.*  Thus, "no moral blame would be attached to the lender's conduct."  *Id.*  Defendants contend that since no common law duty exists as held in *Lueras*, Clinton's negligence cause of action must fail.  Mot. 5.

In response, Clinton relies on *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014), where the California Court of Appeal for the First District concluded that a lender had a duty of care when processing and handling an application for a loan modification.  Opp'n 5; *see Alvarez*, 228 Cal. App. 4th at 948.  The *Alvarez* court acknowledged the general rule that the lender owes no duty, but concluded that a duty of care existed when the lender was reviewing a borrower's application for a loan modification under the *Biakanja* factors.  *See id.* at 946-51.  The

---

[1] The *Martinez* court noted,"[i]n a recent unpublished decision, the Ninth Circuit declined to certify the question to the California Supreme Court."  2016 WL 3906810, at *7 n.4 (*citing Anderson v. Deutshe Bank Nat. Trust Co. Americas*, 649 Fed. App'x 550 (9th Cir. May 4, 2016).

Honorable Kimberly Mueller recently described the reasoning of the *Alvarez* court when weighing the *Biakanja* factors:

> [B]ecause (1) a loan modification is intended to benefit the borrower, (2) it is foreseeable that failures in the timeliness or accuracy will harm the borrower, (3) "the bank holds all the cards" in a loan modification process, and (4) imposing a duty of care on the lender would reign in 'dual tracking,' mitigate the lender's incentives to mis- or under-inform borrowers, and further the California's Legislature's object in passing the California Homeowner Bill of Rights (HBOR), a residential mortgage borrower can state a negligence claim against a lender for breaches of its duty of care in processing and considering an application for a loan modification.

*Martinez*, 2016 WL 3906810, at *7 (citing *Alvarez*, 228 Cal. App. 4th at 948-52).

In *Martinez*, Judge Mueller followed *Alvarez*. I will as well.[2]

Due to the particular nature of the relationship between Clinton and SPS in the loan modification, I find that the *Biakanja* factors weigh in favor of finding that SPS owed Clinton a common law duty to exercise reasonable care in processing Clinton's application. The loan modification was intended to benefit Clinton, as he would maintain his interest in the property. Due to the privity of the relationship between Clinton and his loan servicer, Clinton was unable to seek a loan modification in other settings, so the bank here "holds all the cards." *See Alvarez*, 228 Cal. App. 4th at 949. It was foreseeable that he would be harmed as a result of a misrepresentation or inaccurate determination of his complete application by the loan servicer. And, imposing a duty upon SPS would help deter dual tracking, a practice targeted by the California Homeowners' Bill of Rights as discussed later in this Order.[3]

---

[2] In finding a duty here, I apply the *Biakanja* factors, taking into account the lender's alleged conduct in refusing to admit that Clinton had submitted a complete application or to answer his questions whether further or different documentation was needed despite repeated telephone calls, and then failing to deliver its evaluation of the admittedly complete application within 30 days, as promised. Compl. ¶¶ 49-56. These facts distinguish this case from the unpublished Ninth Circuit decision in *Anderson* (*see supra* note 1), and decisions that rely on *Anderson*, such as *Ivey v. JP Morgan Chase Bank, N.A.*, No. 16-CV-00610-HSG, 2016 WL 4502587, at *5 (N.D. Cal. Aug. 29, 2016), and *Coury v. Caliber Home Loans, Inc.*, No. 16-CV-05583-RS, 2016 WL 6962882, at *6 (N.D. Cal. Nov. 29, 2016). Those cases merely determine that lenders do not owe a duty of care to process a borrower's loan application *within a particular time frame. See, e.g.*, *Anderson*, 649 F. App'x at 552.

[3] Dual tracking "occurs when a financial institution continues to pursue foreclosures even while evaluating a borrower's loan modification application." *Foronda v. Wells Fargo Home Mortgage, Inc.*, No. 14-cv-03513-LHK, 2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014).

6

As in *Martinez* and *Alvarez*, I find that "a lender does owe a duty of care to a borrower not to make material misrepresentations about the status of an application for a loan modification and that a borrower would foreseeably be harmed by an inaccurate or untimely communication … about the status of a loan modification application." *Martinez*, 2016 WL 3906810, at *8 (citing *Alvarez*, 228 Cal App. 4th at 946-47) (internal quotation marks omitted).  SPS owes Clinton a duty to exercise reasonable care in the handling and processing of his application.

### B. Breach of duty

Defendants further argue that even if a duty of care existed, SPS did not breach that duty. Mot. 5.  Defendants argue that there was no breach as the "Plaintiff admits in the Complaint that SPS did not indicate it received a complete application until April 2016." *Id.*  Defendants overlook the heart of Clinton's negligence cause of action—SPS refused to acknowledge a complete application for sixteen months.  Clinton asserts:

> As a direct and a proximate result of SPS's failure to properly and timely file, organize, update, upload into their system, and account for each of Plaintiff's submitted documents, forms and records submiteed [sic] pursuant to Plaintiff's invited application for a loan modification, Defendant SPS was able to maintain and perpetuate their "back and forth games" of "missing documents" or "incomplete application" notices for approximately 17 [sic] months.

Compl. ¶ 63.

Weighing the allegations in the light most favorable to the nonmoving party, Clinton's complaint alleges adequate facts that support a breach of the duty he was owed.

### C. Cause of alleged damages

SPS also argues that its conduct was "neither the proximate nor direct cause of any alleged damages." Mot. 5.  I disagree.  It is foreseeable that the borrower would be harmed by a misrepresentation or inaccurate statement regarding the application for loan modification.  As the *Alvarez* court concluded, "There is a close connection between [d]efendant's conduct and any injury suffered, because, to the extent [p]laintiff otherwise qualified and would have been granted a modification, [d]efendant's conduct in misdirecting the papers submitted by [p]laintiff directly precluded the loan modification application from being timely processed." 228 Cal. App. 4th at

948. Here, Clinton asserts that he has been harmed by being "unfairly preclude[d] the promised opportunity to be considered for a loan modification at a time where Plaintiff could have prevented further arrearage… ." Compl. ¶ 65. He claims that his credit standing lost an avoidable 60-100 points during the 16 months he was waiting for processing of his loan modification application. *Id.* ¶ 66. He asserts that he incurred substantial avoidable costs by repeatedly faxing and mailing documents for his application, as well as lost time away from work. *Id.* ¶ 67. Clinton adequately alleges harm resulting from defendants' alleged conduct.

In sum, I conclude that Clinton has adequately pleaded (i) that SPS had a duty to exercise reasonable care in the processing and reviewing of Clinton's application for a loan modification, (ii) that SPS breached that duty, and (iii) that Clinton's damages were caused by SPS's failure to reasonably handle and process the application. Defendants' motion to dismiss Clinton's negligence cause of action is DENIED.

## II. CALIFORNIA CIVIL CODE SECTION 2923.6(c)

Clinton also asserts statutory claims under the California Homeowners' Bill of Rights ("HBOR"). Pursuant to California Civil Code section 2923.6(c), he alleges that SPS recorded a NOD and NOTS while the first loan modification application was pending. Defendants argue that this claim must fail because Clinton's *completed* application was not pending until April 22, 2016, and, therefore, SPS's recordings of the NOD on January 14, 2016 and the NOTS on April 15, 2016 were not violations of section 2923.6(c). Mot. 6.

Section 2923.6(c) provides:
> If a borrower submits a *complete application* for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent *shall not record a notice of default or notice of sale, or conduct a trustee's sale*, while the complete first lien loan modification application is *pending*.

Cal. Civil Code § 2923.6(c) (emphasis added). It seeks to "prohibit deceptive and abusive home foreclosure practices," such as dual tracking. *Foronda v. Wells Fargo Home Mortgage, Inc.*, No. 14-cv-03513-LHK, 2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014). Dual tracking, which Clinton contends happened here, "occurs when a financial institution continues to pursue foreclosures even while evaluating a borrower's loan modification application." *Id.* (internal

8

1 quotation marks and citation omitted).

2 Clinton alleges that he submitted a "complete application" in December 2014. Compl. ¶

3 72. He also alleges that a NOD was recorded on January 14, 2016, *id.* ¶ 52, and the NOTS was

4 recorded on April 22, 2016. *Id.* ¶ 55. Both of those dates follow Clinton's submission of his

5 allegedly complete application in December 2014.[4] For purposes of pleading, I must accept

6 Clinton's allegations as true. While defendants contend there was no violation because the

7 complete application was not pending until April 22, 2016, according to its records, it is

8 immaterial whether SPS's records recorded his application as complete. What matters is if the

9 application was in fact complete. *See Hestrin v. CitiMortgage, Inc.*, No. 14-cv-9836, 2015 WL

10 847132, at *3 (C.D. Cal. Feb. 25, 2015) (concluding plaintiff submitted a complete application

11 despite the fact that the loan servicer later informed plaintiff that his application was incomplete).

12 Given Clinton's allegations that his application was pending in December 2014 and that SPS

13 "would not admit to having received a 'complete application' from Plaintiff," Compl. ¶ 49, and

14 its lack of responsiveness over a sixteen-month period, during which he repeatedly responded to

15 requests for updated materials and requested acknowledgment of the completeness of his

16 application, Clinton has plausibly alleged that SPS recorded a Notice of Default while he had a

17 pending complete application for a loan modification.

18 Defendants' motion to dismiss Clinton's cause of action under section 2923.6(c) is

19 DENIED.

20 **III. CALIFORNIA CIVIL CODE SECTION 2924.10**

21 California Civil Code section 2924.10(a) provides:

22 > When a borrower submits a complete first lien modification application or any document in connection with a first lien
23 > modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five
24 > business days of receipt.

Defendants move to dismiss Clinton's cause of action under section 2924.10 because Clinton

---

[4] Both parties agree that SPS recorded plaintiff's application as complete on April 22, 2016. Plaintiff contends that is not an accurate date to reflect the submission of his complete application as the application was allegedly submitted as complete in December 2014. Opp'n 10. SPS contends that it was not complete until April 22, 2016. Mot. 6.

9

failed to specify which documents SPS failed to acknowledge receipt of or deficiency of the submission. Mot. 6. Clinton maintains that because he alleged a submission date in December 2014 and an acknowledgment of receipt by SPS on April 22, 2016, it is reasonable to infer that SPS failed to acknowledge receipt within five days. Opp'n 12. I agree.

In *Hestrin v. CitiMortgage, Inc.*, the plaintiff alleged that he sent his modification application on July 5 but did not receive acknowledgement from defendant until 25 days later. 2015 WL 847132, at *4. The court found that it was reasonable to assume that the defendants *received* the application more than five days prior to the date of acknowledgment. *Id.* Here, it is also reasonable to infer that SPS received Clinton's application more than five days before April 22, 2016, given that Clinton submitted it in December of 2014, sixteen months earlier. Compl. ¶¶ 46, 49, 62, 65. Further, he alleges he received SPS's notice of a complete application "without being required to submit any further additional or missing documents." Compl. ¶ 56. Clinton has plausibly alleged a violation of section 2924.10(a).

Defendants argue that plaintiff's allegations are insufficient because Clinton did not identify the specific documents to which SPS failed to respond in a timely manner, citing *Jerviss v. Select Portfolio Servicing, Inc.*, No. 15-cv-01904-MCE-KJN, 2015 WL 7572130 (E.D. Cal. Nov. 25, 2015). In *Jerviss*, the court found the plaintiff failed to state a cause of action under section 2924.10 because the plaintiff failed to identify to which submission the defendants failed to respond. *Id.* at *7. I find *Jerviss*, and the defendants' focus on individual documentation, unnecessarily narrow. Here, Clinton alleges that he submitted his complete application in December 2014, but did not receive "written acknowledgement of the receipt of the documentation" until April 2016. Section 2924.10(a) requires defendants to acknowledge receipt of a complete application or *any* document in connection with a first lien modification application. Cal. Civ. Code § 2924.10(a); *see also Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 1000 (N.D. Cal. 2014). Because SPS failed to provide receipt of the alleged complete application, or any document, within five days of receipt following Clinton's December 2014 submission, I conclude Clinton has plausibly alleged a violation. *See Estrada v. Caliber Home Loans, Inc.*, 172 F. Supp. 3d 1108, 1116 (C.D. Cal. 2016) ("The failure to provide receipts also constitutes a

1   violation of the statute.")

2   Defendants argue that even if SPS failed to deliver acknowledgement or deficiency of the

3   submission, it cured that failure as allowed under section 2924.12(c) by providing Clinton with

4   written acknowledgement of a "completed application" on April 22, 2016. Mot. 7; Reply 5.

5   Section 2924.12(c) provides:

> (c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has *corrected and remedied* prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

9   Cal. Civil Code § 2924.12(c) (emphasis added). Defendants again rely on *Jerviss* to argue that

10  they cured any alleged violation of 2924.10. But the defendants in *Jerviss* "contend[ed] that they

11  ha[d] corrected and remedied any purported violation of section 2924.10 by postponing the

12  trustee's sale *and denying* Plaintiffs' complete application for a loan modification." 2015 WL

13  7572130, at *7 (emphasis added). In addition to dismissing the section 2924.10 claim for failing

14  to identify the specific submissions to which the defendant allegedly did not respond, the *Jerviss*

15  court found that the defendant had sufficiently cured the violation of section 2924.10 when it

16  postponed the trustee's sale, acknowledged receipt of the complete application, *and* denied the

17  application. 2015 WL 7572130, at *7.

18  I already found the *Jerviss* court's interpretation of section 2924.10 overly narrow. Also, it

19  is not clear to me why the acts of (1) postponing the trustee's sale, (2) acknowledging receipt of

20  the complete application, and (3) denying the application, necessarily amount to "correct[ing] and

21  remed[ying]" a statutory requirement to provide written acknowledgement of receipt within five

22  days of receipt. *Id.* I am not persuaded that SPS's written notification of receiving a complete

23  application as of April 22, 2016 sufficiently cures any violation of section 2924.10.

24  Regardless of whether defendants "corrected and remedied" the violation as defendants

25  contend they have, I take the allegations in Clinton's complaint as true when determining whether

26  Clinton has plausibly alleged a violation of section 2924.10. In *Jones v. Aegis Wholesale Corp.*,

27  the court found that plaintiffs alleged a violation of section 2924.10 where the plaintiffs alleged

28  simply the submission of a completed application to defendant and defendant "did not provide

1  written acknowledgment within five business days of receipt of [the application.]" No. 15-cv-
2  01134-JAM-CKD, 2015 WL 9260837, at *4 (E.D. Cal. Dec. 18, 2015).  Here, the Complaint
3  states that Clinton submitted a complete application in December 2014 and did not receive
4  acknowledgment until April 22, 2016.  Compl. ¶¶ 46, 56.  At the pleading stage, Clinton has
5  plausibly alleged a violation of section 2924.10.  Defendants' motion to dismiss is DENIED.

## CONCLUSION

Clinton has sufficiently pleaded causes of action for negligence, violation of Cal. Civil Code section 2923.6(c), and violation Cal. Civil Code section 2924.10.  Defendants' motion to dismiss is DENIED.  They shall answer on or before December 12, 2016.

**IT IS SO ORDERED**.

Dated: December 1, 2016

_____
WILLIAM H. ORRICK
United States District Judge